1   DILLINGHAM & MURPHY, LLP
    CARLA J. HARTLEY (SBN 117213)
2   BERNICE K. WU (SBN 329661)
    601 Montgomery Street, Suite 1900
3   San Francisco, CA 94111
    Telephone: (415) 397-2700
4   Facsimile: (415) 397-3300
    cjh@dillinghammurphy.com
5   bkw@dillinghammurphy.com

6   Attorneys for Defendant Stars Bay Area, Inc.

7

8                    IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12

13  KRISTEN PETRICK, AS                    Case No. 19-cv-03105-VKD
    PLAINTIFF/RELATOR FOR THE UNITED
14  STATES OF AMERICA, AND THE STATE       **DEFENDANT'S NOTICE OF MOTION
    OF CALIFORNIA,                         AND MOTION TO DISMISS
15                                         RELATOR'S AMENDED COMPLAINT;
                    Plaintiff,             MEMORANDUM OF POINTS AND
16                                         AUTHORITIES**
            v.
17                                         Date:   February 9, 2021
    STARS BAY AREA, INC., AND DOES 1-25,   Time:   10:00 a.m.
18                                         Crtrm:  2
                    Defendants.            Judge:  Hon. Virginia K. DeMarchi
19

20

21

22            **NOTICE OF MOTION AND MOTION TO DISMISS**

23          TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

24          PLEASE TAKE NOTICE that on February 9, 2021 at 10:00 a.m., or as soon thereafter

25  as this matter may be heard before the Honorable Virginia K. DeMarchi, Magistrate Judge,

26  United States District Court for the Northern District of California, San Jose Division, in

27  Courtroom 2, 5th floor, 280 S. First Street, San Jose CA, or via Zoom, Defendant Stars Bay

28  Area, Inc. will and hereby does move this Court for an order dismissing with prejudice Relator

1  Kristen Petrick's Amended Complaint without leave to amend pursuant to Rules 9(b) and

2  12(b)(6) of the Federal Rules of Civil Procedure for failure to plead allegations of fraud with

3  particularity and failure to state claims upon which relief can be granted.

4       This Motion is based on this Notice and Motion to Dismiss, the accompanying

5  Memorandum of Points and Authorities, all pleadings and papers in this action, and any oral

6  argument at time of hearing.

7

8  DATE:  December 28, 2020          DILLINGHAM & MURPHY, LLP

9

10            ___/s/ Carla J. Hartley_____
          CARLA J. HARTLEY

11            BERNICE K. WU
          Attorneys for Defendant Stars Bay

12            Area, Inc

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENT

I.    INTRODUCTION........................................................................... 1

II.   PERTINENT ALLEGATIONS OF THE AMENDED COMPLAINT ......................... 3

III.  ISSUE TO BE DECIDED ................................................................. 5

IV.   ARGUMENT................................................................................. 6

      A.    FRCP 12(b)(6) Pleading Standard ........................................... 6

      B.    Required Elements of False Claims Act Claim........................... 6

      C.    FRCP Rule 9(b) Pleading Standard  ......................................... 8

      D.    Relator's Count I Fails to State a Literal or False Certification Claim .......... 10

            (1) Relator's Amended Complaint Does Not Allege a Literal False Claim ..... 10

            (2) A False Certification Claim Must be Based on Certification of Compliance

            with a Statute, Regulation or Contract Provision ................................. 10

            (3)    Relator has Failed to Plead a Statutory, Regulatory or Contractual Basis

            for a False Certification Claim ....................................................... 12

                  (a)    Medi-Cal Plans are Excepted from Health & Safety Code §

                  1374.73 ......................................................................... 12

                  (b)    The Alleged Discussions with Valley Health Plan and Santa

                  Clara Health Plan Do Not Meet the Pleading Standards for False

                  Certification ................................................................... 13

      E.    Relator's Count I Fails to Plead Representative Samples of False Claims or the

            Particular Details of a Scheme to Submit False Claims............................ 14

      F.    Relator's Count 1 Fails to Meet Rule 9(b)'s Standard for Pleading Materiality 16

      G.    Relator's Count 1 Fails to Meet the Rule 9(b) Standard for Pleading Scienter for

            an FCA Action ....................................................................... 16

      H.    Relator's Count II Fails to State a Claim Pursuant to California Government

            Code section 129650 et seq. ....................................................... 17

      I.    Relator's Count III Fails to State a Claim Pursuant to California Insurance Code

            section 1871.4 ....................................................................... 17

      J.    Defendant's Motion Should be Granted Without Leave to Amend ............. 18

1

V.   CONCLUSION..................................................................................................... 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**CASES**                                                                                           **PAGE NO.**

*Ashcroft v. Iqbal* 556 U.S. 662 (................................................................................ 6

*Ascon Props., Inc. v. Mobil Oil, Co. 866 F.2d 1149 (9th Cit. 1989)* ........................... 16

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2004) ...................................... 6, 13

*Consumer Watchdog v. Dept. of Managed Healthcare* 225 Cal. App. 4th 862 (2004) ....11, 12

*Ebeid ex rel. U.S. v. Lungwitz,* 616 F.3d 993 (9th Cir. 2010) ............................ 8, 9, 10, 12, 13

*John Russo Indus. Sheet Metal, Inc. v. City of Los Angeles Dep't of Airports,* 29 Cal.App.5th
378 (2018) ................................................................................................ 15

*Knudsen v. Sprint Communications Nos.* C13-04476, 4465 & 4542, 2016 WL 4548924 (N.D.
Cal. 2016) ............................................................................................... 12

*People v. Hamilton,* 30 Cal. App. 5th 673 (1201084) ...................................... 16

*Universal Health Services, Inc. v. U. S. ex rel. Escobar* 136 S.Ct. 1989
(2016) .......................................................................... 7, 8, 10, 11, 12, 14, 15

*U.S. ex. Rel. Butler v. Hughes Helicopters, Inc.,* 71 F. 3d Sol 321 (9th Cir. 1995) ............12

*U.S ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.* 637 F.3d 1047 (9th Cir. 2011)...........8, 14

*United States ex rel. Campie v. Gilead Scis., Inc.,* 862 F.3d 890 (9th Cir. 2017) ............. 7, 13

*U.S. ex rel. Hendow v. University of Phoenix* 461 F.3d 1166 (9th Cir. 2006) ....................... 9

*U.S. ex rel. Hopper v. Anton ("Hopper")* 91 F.3d 1261 (9th Cir. 1996) ................................. 9

*U.S. ex rel. Karp v. Ahaddian,* 16-500 2018 WL 6333670 (C.D Cal. 2018) ................13, 14

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC* 836 F.3d 770 (7th Cir.
2016) ................................................................................................. 8, 17

*U.S. ex rel. Shapiro v. Fairfax Discount Pharm., Inc.* No. 2:18-cv-04888-SVW-GJS, 2019
WL 3291580 (C.D. Cal. Apr. 26, 2019) ................................................................ 9

*U.S. ex rel. Swoben v. United Healthcare Ins. Co.* 848 F.3d 1161 (9th Cir. 2016) ................. 8

*U.S. ex rel. Thomas v. Siemens AG,* 991 F.Supp.2d 540 (E.D. Penn. 2014) ........................ 12

*U.S. v. Corinthian Colls.* 655 F.3d 984 (9th Cir. 2011) ................................................. 15

*United States v. United Healthcare Insurance Company* 848 F.3d 1161 (9th Cir. 2016) ....... 8

**STATUTES**

31 U.S.C. § 3729(a)(1)(A)–(C), (G) ……….................................................... 6, 7

31 U.S.C. § 3729(b)(1)(A) (B) …………………….............................................. 7

31 U.S.C. § 3730(b) (d) (h) ……..................................................................... 7

Cal. Gov't Code § 12652 et seq ……............................................................. 15

Cal. Ins. Code §§ 1871.4 ……......................................................................... 16

Cal. Health & Safety Code §1374.73 …………………………………………….. 11, 12

Cal. Labor  Code § 3207 ……………………………………………………………… 16

**RULES**

Fed. R. Civ. P.8(a) ……….............................................................................. 6

Fed. R. Civ. P. 9(b) ……............................................................................... 8

 Fed. R. Civ. P. 12(b)(6)          ……................................................................ 6

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

### I.   <u>INTRODUCTION</u>

3      Defendant Stars Bay Area, Inc ("Stars") is in the business of providing early

4 intervention for families whose children need development assistance, including those who

5 have Autism Spectrum Disorder.  Stars' programs are multi-disciplinary and include therapies

6 such as Applied Behavior Analysis ("ABA"), speech pathology and occupational therapy.

7 ABA is a form of behavioral health treatment that develops or restores functioning of a person

8 with autism.

9      Relator Kristen Petrick was employed by Stars from October 2, 2017 to October 26,

10 2018.  She was hired as the Regional Director of Stars' fledgling ABA business and later

11 promoted to Director of Operations.  In that role, Relator was responsible for, among other

12 things, ensuring that Stars' ABA program was compliant with licensure and billing

13 requirements.  Relator's employment was terminated due to poor performance.

14      On June 4, 2019, Relator filed her Complaint under seal.  ECF No. 1.  On April 7, 2020,

15 the United States and State of California filed their Notice of Election to Decline Intervention

16 and the Court subsequently ordered the Complaint unsealed and served.  ECF Nos. 9 & 10.

17      The original Complaint alleged four causes of action.  Counts I through III sought *qui*

18 *tam* recovery pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. section

19 3729(a)(1)(A) & (B), California False Claims Act ("CFCA"), California Government Code

20 section 12652 *et seq*, and California Insurance Frauds Prevention Act ("IFPA"), California

21 Insurance Code sections 1871 *et seq*.  Count IV alleged that Plaintiff's employment was

22 terminated in violation of the FCA anti-retaliation provision, 31 U.S.C. section 3730(h).

23      On November 20, 2020, Defendant filed its Motion to Dismiss Counts I through III of

24 the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

25 ECF 17.  On December 11, 2020, Relator filed an Amended Complaint in lieu of opposing

26 Defendant's Motion to Dismiss.  ECF 27.  Relator's Amended Complaint contains additional

27

28

1     allegations in support of Counts I through III.[1]

2        Relator attempts to allege that Defendant violated the federal and state False Claims

3     Acts and the California Insurance Frauds Prevention Act by billing federal, state and private

4     health care payors for services provided by employees who did not have the qualifications

5     required by the billing codes. Relator's amendments have failed to cure the same fatal

6     deficiencies that existed in her original Complaint. As set forth below, the Amended

7     Complaint must be dismissed because all of the claims fail to meet the pleading requirements

8     of Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure:

9        Count I fails to plead with particularity the elements of an FCA action: a false

10    statement or fraudulent course of conduct, made with scienter, that was material, causing the

11    federal government to pay out money or forfeit moneys due. Relator has not alleged that

12    Defendant submitted any claims to the federal government that was facially false or fraudulent.

13    She also has not alleged any contractual, statutory or regulatory obligation that Defendant

14    either expressly or implicitly falsely certified compliance with. Although Relator's Amended

15    Complaint references portions of California Health and Safety Code section 1374.73, the

16    statute is not applicable to Medi-Cal programs. Nor do Relator's alleged conversations with

17    representatives of Valley Health Plan and Santa Clara Family Health Plan satisfy the

18    requirement that Defendant's alleged false certification be tied to a statute, regulation or

19    contract provision.

20        Count I also fails to properly plead a false claim. The Amended Complaint fails to

21    plead that any false claim was actually submitted to a federal payor or the details of a scheme to

22    submit false claims with reliable indicia leading to a strong inference that claims were actually

23    submitted. Relator, who as Defendant's Director of Operations was the ultimate insider, resorts

24    to alleging on "information and belief" that false claims were submitted.

25        For similar reasons, Count I fails to properly plead the FCA elements of materiality and

26    scienter.

27

28    [1] Paragraphs 16-18, 20-24, and 26-30 of the Amended Complaint contain new allegations. Count IV, Plaintiff's employment retaliation claim, has been deleted from the Amended Complaint. However, Plaintiff is pursuing employment-related claims against Defendant in a separate action.

1       Count II similarly fails to meet the pleading standards of Rules 9(b) and 12(b)(6)

2   because the California False Claims Act is premised on the federal FCA and looks to the same

3   case law in interpreting the CFCA.

4       Finally, Relator has amended Count III, her California Insurance Frauds Prevention Act

5   claim to cite Insurance Code section 1871.4 as the basis for the claim.  However, section

6   1871.4 applies solely to fraudulent workers' compensation claims.  Relator has not alleged that

7   the services Defendant provided to autistic children were paid by a workers' compensation

8   carrier.  III fails to meet the requirements of Rules 12(b)(6) and 9(b) for the same reasons as

9   Counts I and II.

10  **II.      PERTINENT ALLEGATIONS OF THE AMENDED COMPLAINT**

11      According to the Amended Complaint, "Stars is engaged in the business of providing

12  therapy services to children who are billed and payments made through private insurance

13  companies including Aetna, CIGNA, Anthem Blue Cross, Magellan, United Healthcare,

14  Beacon and CCH and government insurance including Valley Health Plan and Santa Clara

15  Family Health Plan covering Medicaid patients and Medi-Cal patients … ."  ECF No. 27, ¶ 6.

16      Relator was a Board Certified Behavioral Analyst or BCBA.  ECF No. 27, ¶ 15.  "In

17  her role as Director of Operations, [Relator] was responsible for generating reports of services

18  provided and corresponding billing codes from a software program called Central Reach."

19  ECF No. 27, ¶ 16.  "One of her job tasks was identified as high priority was to 'maintain

20  accurate documentation of billable tasks that meets the requirements of regulatory agencies and

21  funding sources.'"  ECF No. 27, ¶ 17.  "The reports from Central Reach provided the dates of

22  service, provider and billing codes used for the billing department to submit payment from the

23  government and private insurance companies."  ECF No. 27, ¶ 18.  "In this position, [Relator]

24  questioned certain billing practices under her credentials including Stars cannot use 'leads' to

25  support Parent Training because they do not have a Master's Degree."  ECF No. 27, ¶ 19.

26  "[Relator's] reports from Central Reach revealed that 'leads' were submitting services provided

27  under billing codes for Initial Assessments, Plan Development, Parent Training and

28

1    Supervision that can only be performed by a Board Certified Behavioral Analyst (BCBA)."

2    ECF No. 27, ¶ 20.

3            "California Health and Safety Code 1374.73 states that that treatment plan is to be

4    prescribed by a qualified autism services provider but services can be provided by the

5    following:  1) a qualified autism service provider; 2) a qualified autism service professional

6    supervised by the qualified autism provider; or 3) a qualified autism service paraprofessional

7    supervised by a qualified autism service provider or qualified autism service professional."

8    ECF No. 27, ¶ 24.

9            "On January 19, 2018, Relator sent Marysol a list of questions regarding funder

10   requirements for Aetna, Cigna, Anthem Blue Cross, Magellan, United Healthcare, VHP,

11   SCFHP, Beacon and CCAH.  Marysol responded with answers that a BcABA and Master's

12   student were authorized to submit billing claims under H0031 and H0032."  ECF No. 27, ¶ 25.

13           The Amended Complaint then alleges that five "leads" performed various services and

14   corresponding billing codes on certain dates.  For example:  "Crystal Malek performed the

15   following services and corresponding billing codes:  Parent Training (S5111) on January 2,

16   2018; BCBA Supervision (H0032) on February 5, 2018; and BCBA Supervision (H0032) on

17   February 6, 2018."  ECF No. 27, ¶¶ 26-30.

18           "[Relator] brought this to the attention the CEO of Stars, Mark Ramos, on March 8,

19   2018.  She was called into an office where Mr. Ramos told her that such practices were

20   allowed."  ECF No. 27, ¶ 31.  "[Relator] questioned Marysol Orozco's assurance that the

21   'H0032' billing code could be selected for ABA clients."  ECF No. 27, ¶ 32.  "[Relator]

22   contacted Laura Phillips at Valley Health Plan (VHP) and Nohami from Santa Clara Health

23   Plan (SCHP) to confirm who can bill at what code."  ECF No. 27, ¶ 33.

24           "VHP confirmed that Initial Assessments under 'H0031', Plan Development under code

25   'H0032', Supervision under code 'H2014' could only be performed and billed by a BCBA.

26   VHP confirmed that other services such as Parent Training could be performed and billed by a

27   BCBA, BcABA or EI; and Direct Therapy could be performed and billed by a BCBA or EI."

28   ECF No. 27, ¶ 34.

1   "SCFHP confirmed that an Initial Assessment under code 'H0031' could be performed
2   and billed by a BCBA only; Plan Development/Supervision under code 'H0032' could be
3   performed and billed by a BCBA or with a Master's Degree; Direct Therapy under code
4   'H2019' could be performed and billed by a BCBA or EI; and Parent Training under code
5   'S5111' could be performed and billed by a BCBA or with a Master's Degree." ECF No. 27, ¶
6   35.

7   "On October 28, 2018, [Relator] was called into a meeting and told she was not a good
8   fit.  There were no previous counselling, performance improvement plans or warnings." ECF
9   No. 27, ¶ 37.

10   "Based upon the above and upon information and belief, Defendants knowingly,
11   unlawfully, and wrongfully submitted and/or caused false claims, records and statements to
12   officials of the United States, California and private insurance companies for the purpose of
13   obtaining payment or approval in connection with a series of contracts and modifications,
14   including:  (a) submitting under billing codes including 'H0031' and 'H0032" requiring BCBA
15   certification; (b) Defendants submitting billing requiring supervision and certification; and (c)
16   double-billing authorized by Marysol including on September 4, 2018 under 'H0032' between
17   uncertified Lead and the BCBA." ECF No. 27, ¶ 39.

18   **III.   ISSUES TO BE DECIDED**

19   A.      Whether Relator's Amended Complaint describes a fraud or scheme on the part
20   of Defendant to submit false claims under 31 U.S.C. section 3729(a)(1)(A) or (B) of the FCA
21   and the CFCA with the necessary particularity required by Rules 9(b) and standards required by
22   12 (b)(6) of the Federal Rules of Civil Procedure?

23                  (1)     Whether Relator's Amended Complaint meets the above pleading
24   standards by describing a facially false claim theory?

25                  (2)     Whether Relator's Amended Complaint meets the above pleading
26   standards by describing a statute, regulation, or contract provision as a basis for an express or
27   implied false certification theory?

28

(3)     Whether Relator's Amended Complaint alleges any false claim was submitted to the federal or state government or adequately alleges a scheme to submit false claims?

(4)     Whether Relator's Amended Complaint adequately alleges materiality?

(5)     Whether Relator's Amended Complaint adequately alleges scienter?

B.     Whether Relator has stated a claim pursuant to section 1871.4 of the IFPA?

## IV.     ARGUMENT

### A.     FRCP 12(b)(6) Pleading Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must dismiss a complaint that fails to "state a claim upon which relief can be granted." A sufficient claim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The pleading must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions and cannot be a formulaic recitation of the elements of the cause of action. *Twombly* at 555.

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly* at 570; *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims are not plausible if there is an "obvious alternative explanation." *Twombly* at 567. While well-pleaded facts are accepted as true for the purpose of deciding a motion to dismiss, "conclusory allegations" of illegal conduct are insufficient. *Id.* Nor can the complaint contain only labels and conclusions "devoid of further factual enhancement." *Iqbal* at 678. Legal conclusions must be supported by factual allegations. *Id.* at 679.

### B.     Required Elements of False Claims Act Claim

Relator has pleaded violations of 31 U.S.C. section 3729(a)(1)(A) and (B) of the federal False Claims Act ("FCA"). These make liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent

1   claim."   Remedies under the FCA include treble damages and civil penalties.   31 U.S.C. §

2   3729(a)(1)(G).   The FCA allows private persons to enforce its provisions by bringing a *qui tam*

3   suit on behalf of the United States.   31 U.S.C. § 3730(b).   A qui tam relator is permitted to

4   share in any recovery obtained in an FCA action.   31 U.S.C. § 3730(d).

5       An FCA claim requires a showing of:   "(1) a false statement or fraudulent course of

6   conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out

7   money or forfeit moneys due."   *United States ex rel. Campie v. Gilead Scis., Inc.,* 862 F.3d 890,

8   899 (9th Cir. 2017).

9       Because Congress did not define "false or fraudulent," it is presumed that it

10   incorporates common-law definitions.   *Universal Health Services, Inc. v. U. S. ex rel. Escobar*

11   ("*Escobar*"), 136 S.Ct. 1989, 1999 (2016).

12       The FCA's scienter requirement that false claims be presented for payment

13   "knowingly" requires that the defendant "(i) has actual knowledge of the information; (ii) acts

14   in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless

15   disregard of the truth or falsity of the information."   31 U.S.C. § 3729(b)(1)(A).   "Knowingly"

16   does not require proof of specific intent to defraud.   § 3729(b)(1)(B).

17       The term "material" means "having a natural tendency to influence, or be capable of

18   influencing, the payment or receipt of money or property."   § 3729(b)(4).   "'[A]

19   misrepresentation is material' only if it would 'likely … induce a reasonable person to manifest

20   his assent,' or the defendant 'knows that for some special reason [the representation] is likely to

21   induce the particular recipient to manifest his assent' to the transaction."   *Escobar* 136 S.Ct. at

22   2003 (citation omitted).

23       As explained by the Supreme Court in *Escobar*:

24       "The materiality standard is demanding.  The False Claims Act is not 'an all-
25       purpose antifraud statute,' … or a vehicle for punishing garden-variety breaches
        of contract or regulatory violations.  A misrepresentation cannot be deemed
26       material merely because the Government designates compliance with a particular
        statutory, regulatory, or contractual requirement as a condition of payment.  Nor
27       is it sufficient for a finding of materiality that the Government would have the
        option to decline to pay if it knew of the defendant's noncompliance.  Materiality,
28

1    in addition, cannot be found where noncompliance is minor or insubstantial.
     (citations omitted)" *Ibid.*

2    **C.    FRCP Rule 9(b) Pleading Standard**

3         Since FCA lawsuits involve allegations of fraud, the circumstances of the fraud must

4    be stated with particularity.  Fed. R. Civ. P. 9(b); *U.S. ex rel. Cafasso v. Gen. Dynamics C4*

5    *Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011).  In an FCA case, "[t]his means the plaintiff

6    must allege 'the who, what, when, where, and how of the misconduct charged,' including what

7    is false or misleading about a statement and why it is false."  *U.S. ex rel. Swoben v. United*

8    *Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal citation omitted).  If Relator

9    is unable to identify actual submitted claims, then she must allege "'particular details of a

10   scheme to submit false claims paired with reliable indicia that lead to a strong inference that

11   claims were actually submitted.'"   *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998-999 (9th

12   Cir. 2010) (citation omitted).

13        As explained in *United States v. United Healthcare Insurance Company*, Rule 9(b)

14   serves two principal purposes:

15        "First, 'allegations of fraud must be "specific enough to give defendants notice of
16        the particular misconduct which is alleged to constitute the fraud charged so that
         they can defend against the charge and not just deny that they have done anything
17        wrong." ' …   Thus, '[p]erhaps the most basic consideration for a federal court in
         making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b)
18        … is the determination of how much detail is necessary to give adequate notice to
         an adverse party and enable that party to prepare a responsive pleading.'
19
20        Second, the rule serves 'to deter the filing of complaints as a pretext for the
         discovery of unknown wrongs, to protect defendants from the harm that comes
21        from being subject to fraud charges, and to prohibit plaintiffs from unilaterally
         imposing upon the court, the parties and society enormous social and economic
22        costs absent some factual basis.' …  By requiring some factual basis for the
         claims, the rule protects against false or unsubstantiated charges.  848 F.3d 1161,
23        1180 (9th Cir. 2016) (citations omitted).

24        Courts have also observed that "'fraud is frequently charged irresponsibly by people

25   who have suffered a loss and want to find someone to blame for it.'"  *United States ex rel.*

26   *Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (citation

27   omitted).

28

1    Relators must have sufficient inside knowledge to bring claims and the Ninth Circuit

2  has rejected attempts of "claims by an outsider … especially because the FCA is geared

3  primarily to encourage insiders to disclose information necessary to prevent fraud on the

4  government." *Ebeid*, 616 F.3d at 999.  The heightened pleading standards are not relaxed just

5  because a Relator does not have access to information necessary to state a claim.  *U.S. ex rel.*

6  *Shapiro v. Fairfax Discount Pharm., Inc.*, No. 2:18-cv-04888-SVW-GJS, 2019 WL 3291580 at

7  *3 (C.D. Cal. Apr. 26, 2019).

8        **D.    Relator's Count I Fails to State a**
9              **Literal or False Certification Claim**

10            (1) Relator's Amended Complaint Does Not Allege a Literal False Claim

11    "The archetypal *qui tam* FCA case is filed by an insider at a private company who

12  discovers his employer has overcharged under a government contract."  *U.S. ex rel. Hopper v.*

13  *Anton* ("*Hopper*"), 91 F.3d 1261, 1266 (9th Cir. 1996).  This is a claim for payment that is

14  facially false or fraudulent.  *Ibid.*  In this case, Count I in the Amended Complaint does not

15  plead that any claims submitted by Defendant to the United States[2] were facially false or

16  fraudulent.  For example, there are no allegations that Defendant billed for services that were

17  not provided or billed too much for the services that were provided.

18            (2) A False Certification Claim Must be Based on Certification of
19                Compliance with a Statute, Regulation or Contract Provision

20    Courts have also recognized that FCA actions can be based on a theory of false

21  certification.  *Hopper*, 91 F.3d at 1266.  False certification claims are based on a party falsely

22  certifying compliance with a statute or regulation as a condition to government payment.  *See,*

23  *e.g., U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1171 (9th Cir. 2006).

24  Actionable false certification may be either express or implied.  *Ibid.*  Express certification

25

26  _____
[2] The Amended Complaint alleges that Stars received payment from "government insurance" covering "Medicare
27  patients and Medi-Cal patients."  ECF 27, ¶ 6.  Medicaid is a joint federal-state program designed to provide
medical assistance to individuals with insufficient income and resources.  42 U.S.C. § 1396.  Medi-Cal is
California's implementation of Medicaid.  *See, e.g., Armando D. v. State Department of Health Services*, 124
28  Cal.App.4th 13, 16 (2004).  Thus, claims that Relator alleges were made to Medicaid or Medi-Cal would have
involved both federal and state monies.

1   occurs when an entity seeking payment certifies compliance with a law, rule or regulation as
2   part of the process through which a claim for payment is submitted. *Ebeid,* 616 F.3d at 998.  In
3   certain circumstances, implied certification can also be a basis for liability.  Implied false
4   certification must meet two conditions: "first, the claim does not merely request payment, but
5   also makes specific representations about the goods or services provided; and second, the
6   defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual
7   requirements makes those representations misleading half-truths." *Escobar,* 136 S.Ct. at 2001.

8        As the Supreme Court decision that recognized the false implied certification theory and
9   because the allegations involved the failure to meet medical licensure requirements, *Escobar* is
10  instructive in this action.  In *Escobar*, the relators were the parents of a bipolar child who died
11  of a seizure related to medication prescribed while the child was in a facility owned and
12  operated by the defendant.  The relators alleged that the defendant submitted claims for
13  reimbursement "that made representations about the specific services provided by specific
14  types of professionals, but that failed to disclose serious violations of Massachusetts Medicaid
15  regulations pertaining to staff qualifications and licensing required for these services." *Escobar*
16  at 1993.  For example, the practitioner who diagnosed the daughter as bipolar identified herself
17  as a psychologist with a Ph.D. but failed to disclose that her degree came from an unaccredited
18  Internet college and Massachusetts had rejected her application to become licensed.  Similarly,
19  the practitioner who had prescribed the medication to the daughter and was held out as a
20  psychiatrist was a nurse who lacked authorization to prescribe medication. *Escobar* at 1997.
21  In addition, staff members misrepresented their qualifications and licensing status to the
22  Federal Government to obtain individual National Provider Identification numbers, which were
23  submitted with Medicaid reimbursement claims. *Escobar* at 1997.  The Massachusetts
24  Medicaid program required facilities to have specific types of clinicians on staff, delineated
25  licensing requirements for certain positions and detailed supervision requirements for other
26  staff. *Escobar* at 1998 (citing 130 Code Mass. Regs. §§ 429.422-424, 429.439).

27       Based on these allegations, *Escobar* found that the relators' complaint adequately
28  pleaded a claim for FCA violation based on the theory of false implied certification:

"... by submitting claims for payment using payment codes that corresponded to specific counseling services, Universal Health represented that it had provided individual therapy, family therapy, preventive medication counseling and other types of treatment.   Moreover, Arbour staff members allegedly made further representations in submitting Medicaid reimbursement claims by using National Provider Identification numbers corresponding to specific job titles.  And those representations were clearly misleading in context." *Escobar* at 2000.

In this case, as set forth below, Relator has failed to plead with particularity a legal obligation that Defendant expressly or implicitly falsely certified compliance with.

### (3) Relator has Failed to Plead a Statutory, Regulatory or Contractual Basis for a False Certification Claim

Relator's Amended Complaint fails to allege a statutory, regulatory or contractual obligation that Defendant falsely certified compliance with, as required by *Escobar*.  The Amended Complaint cites California Health and Safety Code section 1374.73. ECF No. 27, ¶ 24.  However, Medi-Cal plans are expressly exempted from section 1374.73.  Although the Amended Complaint references "a series of contracts and modifications" (ECF No. 27, ¶ 39), the Complaint fails to allege what, if any, obligations these contracts created with respect to the qualifications of Defendant's employees.  Relator alleges that she received certain information on this topic from Valley Health Plan and Santa Clara Health Plan.  However, this is not sufficient to set forth a clear legal standard that Defendant allegedly explicitly or implicitly falsely certified compliance with.

### (a) Medi-Cal Plans are Excepted from Health & Safety Code § 1374.73

After Defendant filed its first Motion to Dismiss pointing out that Relator had failed to plead any legal obligation as a basis for a false certification claim, Relator amended her Complaint to cite California Health and Safety Code section 1374.73. ECF 27, ¶ 24.  Section 1374.73 does not apply to Medi-Cal plans.

California Health and Welfare Code section 1374.73 was enacted in 2011 to require health plans covered by California's Knox-Keene Act to provide Applied Behavioral Analysis treatment for autism.   Health & Safety Code § 1374.73(a)(1); *Consumer Watchdog v. Dept. of Managed Health Care*, 225 Cal.App.4th 862, 874 (2014).  Section 1374.73 also sets forth the

1    criteria for such treatment to be covered and qualifications for professionals providing the

2    treatment.  § 1374.73(c)(1), (3)-(5).  However, health plans in the Medi-Cal program are

3    specifically exempted from section 1374.73.  Subd. (d)(2); *Consumer Watchdog*, 225

4    Cal.App.4[th] at 875.  Thus, the qualification standards set forth in section 1374.73 do not apply

5    to any services Defendant bills to a Medi-Cal plan.

6

7                      (b) The Alleged Discussions with Valley Health Plan and Santa Clara
                             Health Plan Do Not Meet the Pleading Standards for False
8                            Certification

9            Relator alleges that she contacted "Laura Phillips at Valley Health Plan" and "Nohami

10   from Santa Clara Health Plan" to confirm "who can bill at what code."  ECF 27, ¶ 33.

11   However, the allegations are not a substitute for the actual legal obligations, if any, these plans

12   imposed on Defendant with respect to the qualifications of employees providing services.  Case

13   law is very clear that false certification claims must be tethered to a statute, regulation, or

14   contract provision.  *Escobar, 139 S.Ct.* at 2001 (claim for implied false certification must

15   include specific representation about services provided and that the failure to disclose

16   noncompliance with material statutory, regulatory, or contractual requirements makes the

17   representations misleading half-truths); *Ebeid,* 616 F.3d at 998.  Note that in *Escobar,*

18   Massachusetts had Medicaid regulations that specified qualifications for persons providing

19   mental health services to children.  136 S.Ct. at 2000.

20           In the absence of a specific statute, regulation or contract provision, it is impossible to

21   determine if Defendant has made a false certification.  *See, e.g., U.S. ex rel. Thomas v. Siemens

22   AG*, 991 F.Supp.2d 540, 568 (E.D. Penn. 2014) [defendant's reasonable interpretation of an

23   imprecise contractual term precluded finding of knowledge of falsity]; *Knudsen v. Sprint

24   Communications*, C13-04476, 4465 & 4542, 2016 WL 4548924 at *12 (N.D. Cal. 2016)

25   [scienter requirement not met where regulation only stated that government "seeks" best prices

26   available and relator failed to allege best pricing was a term of the defendant's contract]; *U.S.

27   ex rel. Butler v. Hughes Helicopters, Inc.,* 71 F.3d 321, 329 (9th Cir. 1995) ["The improper

28   interpretation … of a contract, without more, does not constitute a false claim for payment].

1   At best, the information allegedly provided by Ms. Phillips and Nohami is their

2   interpretation of Defendant's obligations or their staffing preference.[3]  The former is not a

3   substitute for Defendant's actual staffing obligations.  The latter explanation of the information

4   provided by Ms. Phillips and Nohami does not even meet the plausibility standard of Rule

5   12(b)(6).  *Twombly*, 550 U.S. at 567 [claims do not meet the plausibility standard if there is an

6   "obvious alternative explanation"].

7

8   **E.    Relator's Count I Fails to Plead Representative Samples of False
         Claims or the Particular Details of a Scheme to Submit False Claims**

9   The Amended Complaint also fails to meet Rule 9(b)'s heightened requirement of

10  pleading either representative samples of false claims submitted by Defendant or the "particular

11  details of a scheme to submit false claims paired with reliable indicia leading to a strong

12  inference that such claims were actually submitted." *Ebeid*, 616 F.3d at 998-999.  In this case,

13  Relator suggests that data from Defendant's Central Reach software was automatically used to

14  generate bills thereby resulting in "false" bills being sent to government payors.  ECF No. 27, ¶

    16-20.  However, the Amended Complaint does not actually allege that a false claim was

15  submitted to the government.  Alleging that "[t]he reports from Central Reach provided the

16  dates of service, provider and billing department to submit payment from the government and

17  private insurance companies" (ECF No. 27, ¶ 18) is not the same as alleging, for example, that

18  Defendant submitted bills containing false information to Valley Health Plan.  The case law is

19  clear that a false claim or statement must be the "'*sine qua non*' of receipt of state funding."

20  *United States ex rel. Campie v. Gilead Sciences*, 862 F.3d at 899 (citation omitted).

        In this case, Relator resorts to alleging that false claims were submitted based on

21  "information and belief." ECF No. 27, ¶ 39.  This is insufficient to meet the particularity

22  requirements of Rule 9(b).  *See, e.g., United States ex rel. Karp v. Ahaddian, 16-500 2018 WL*

23

24

25

26

---

27  [3] According to the Amended Complaint, Ms. Phillips and Nohami provided different information concerning what qualifications were required for their plan.  ECF No. 27, ¶¶ 34 & 35.  For example, Valley Health plan required that services billed under code H0032 be provided by a BCBA while Santa Clara Health Plan permitted either an

28  individual certified as a BCBA or one with a Master's degree to be billed under code H0032.  This suggests that there are not statutorily established qualifications for the services in question such as there were in *Escobar*.

*6333670* at \*3 (C.D. Cal. 2018) ["To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations."]

Relator's efforts to allege a fraudulent scheme by alleging services performed by four specific employees and the corresponding billing codes (ECF No. 27, ¶¶ 27-30) suffer from the same deficiencies. Relator fails to allege that these services were billed.[4] The Amended Complaint does not allege that bills for these services were submitted to the government.

Nor do the allegations of the Amended Complaint provide the "reliable indicia" to create a "strong inference" that false claims were submitted. The "plausibility" standard is not met because there is an obvious alternative explanation, which happens to be true: Defendant used the Central Reach software primarily for scheduling and bills were audited to ensure compliance with each payor's requirements before being sent out.

The omission of specific allegations that Defendant billed the federal government for services provided by an unqualified employee must be viewed from the perspective that Relator had access to this information. Relator was the ultimate insider. As Defendant's Director of Operations, it was her responsibility to ensure that the ABA program was compliant in all respects. ECF No. 27, ¶¶ 14 & 17. The fact that she has failed to allege a single false claim that was submitted to the government for payment is telling. *See Cafasso, U.S. ex rel. v. General Dynamics,* 637 F. 3d 1047, 1056-57 (9th Cir. 2011) [In light of former employee's access to records, failure to identify any particular false claim, and obvious alternative explanation, court would not draw unwarranted and implausible inference that discovery would reveal evidence of such false claims]. That is because Relator knows no false claims were submitted.

### F.    Relator's Count 1 Fails to Meet Rule 9(b)'s Standard for Pleading Materiality

For the same reasons Relator has failed to adequately allege a false claim, the Amended Complaint also fails to allege the element of materiality. As the Supreme Court made abundantly clear in *Escobar,* the materiality standard of an FCA action is "demanding."

---

[4] In addition to not specifically alleging that these services were billed, the Amended Complaint does not allege who the services were billed to. ECF 27, ¶¶ 27-30. Thus, it cannot be determined if the services were billed to a governmental payor. The Amended Complaint only purports to provide information concerning qualification criteria for three payors: Valley Health Plan, Santa Clara Health Plan and CIGNA. ECF No. 27, ¶¶ 34-36. Thus, to the extent that services provided by Ms. Malek and the other three listed employees were allegedly billed to some other payor, there is no means of evaluating whether they met qualification standards.

*Escobar* at 2003. The FCA is not intended to address simple breach of contract or regulatory violations or misrepresentations the Government deems material. *Escobar* at 2003. In the absence of allegations identifying what statutory, regulatory or contractual obligation Defendant violated, it is also impossible to determine if materiality is adequately pleaded.

**G.      Relator's Count 1 Fails to Meet the Rule 9(b) Standard for Pleading Scienter for an FCA Action**

Specific allegations of Defendant's legal obligations are also necessary to determine if Relator has adequately pleaded scienter. "Under Rule 9(b), 'circumstances constituting fraud or mistake' must be stated with particularity, but 'malice, intent, knowledge, and other conditions of a persons mind,' including scienter, can be alleged generally." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 996 (9th Cir. 2011) (citations omitted). However, under the FCA's scienter requirement "'innocent mistakes, mere negligent misrepresentations, and differences in interpretations' will not suffice to create liability." *Ibid.* (citations omitted).

For example, allegations of Defendant's specific statutory, regulatory or contractual obligations are necessary to determine if Defendant acted with the requisite knowledge of falsity.

**H.      Relator's Count II Fails to State a Claim Pursuant to California Government Code section 129650 *et seq.***

The California False Claims Act, California Government Code section 129650 *et seq.*, is "patterned on similar federal legislation and it is appropriate to look to precedent construing the equivalent federal act." *John Russo Indus. Sheet Metal, Inc. v. City of Los Angeles Dep't of Airports*, 29 Cal.App.5th 378, 388 (2018) (quoting *State of California v. Altus Finance*, 36 Cal.4th 1284, 1299 (2005)). Therefore, for the reasons discussed above in connection with Relator's FCA claim, she has also failed to state a claim under the CFCA.

**I.       Relator's Count III Fails to State a Claim Pursuant to California Insurance Code section 1871.4**

Relator's original Complaint failed to allege which provision of the California Insurance Frauds Prevention Act Defendant violated. ECF 1, ¶ 41. After Defendant raised this in its first Motion to Dismiss, Count III was amended to specify it was based on California

1  Insurance Code section 1871.4.  ECF No. 27, ¶ 54.  Section 1871.4 pertains to claims for

2  workers' compensation benefits and does not apply in this action.

3       Section 1871.4 references claims for compensation "as defined in Section 3207 of the

4  Labor Code."  Subd. (a)(1) & (2).  Labor Code section 3207 is part of the California Workers'

5  Compensation Act and section 1871.4 only applies to fraudulent claims for benefits under that

6  Act.  *People v. Hamilton*, 30 Cal.App.5th 673, 683-684 (2018).  There are no allegations in the

7  Amended Complaint suggesting that Defendant was billing workers' compensation insurers for

8  services provided to autistic children.

9       Further, to the extent Relator can point to a section of the IFCA that applies to

10  Defendant, it would also be subject to the pleading requirements of Rules 9(b) and 12(b)(6) that

11  Relator has failed to satisfy.

12       **J.      Defendant's Motion Should be Granted Without Leave to Amend**

13       Defendant's Motion should be granted without leave to amend.  Plaintiff has already

14  amended her complaint in response to Defendant's first Motion to Dismiss.  The first Motion to

15  Dismiss raised the same deficiencies as the present Motion.  ECF 17.  The fact that Relator has

16  not been able to correct these deficiencies indicates that filing another complaint would be

17  futile.  *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).  This is

18  particularly true in light of Relator's position, which made her responsible for billing

19  compliance.  If there was a statute, regulation or contract provision creating a legal obligation

20  on Defendant to only permit employees with certain qualifications to perform certain services,

21  Relator would have cited it.  If Relator could point to a specific false bill that was submitted to

22  a payor she would have alleged it.

23       Leave to amend should also be denied because it would be prejudicial to Defendant.

24  Defendant has already incurred the expense of filing two motions due to fatal deficiencies in

25  Relator's pleadings.  The circumstances of the action suggest that it is part of a vendetta Relator

26  is waging against Defendant due to the termination of her employment.  The cases are clear that

27  the reasons for the heightened pleading standard is to avoid the stigmatic injury potentially

28

1   resulting from being accused of fraud and circumstances where the charge is made

2   irresponsibly. *United States ex rel. Presser v. Acacia Mental Health Clinic*, 836 F.3d 770, 776.

3   **V.      CONCLUSION**

4         For the foregoing reasons, Defendant Stars Bay Area respectfully requests that the

5   Court grants its Motion and dismiss Relator's Amended Complaint without leave to amend.

6   DATE:   December 28, 2020                    DILLINGHAM & MURPHY, LLP

7

8                                               _____/s/ Carla J. Hartley_____
                                                CARLA J. HARTLEY
9                                               BERNICE K. WU
                                                Attorneys for Defendant Stars Bay
10                                              Area, Inc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28