UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KRISTEN PETRICK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STARS BAY AREA, INC,<br><br>Defendant. | Case No. 19-cv-03105-VKD<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 29 |

Plaintiff-relator Kristen Petrick asserts the following claims against defendant Stars Bay Area, Inc. ("Stars") and Does 1-25 on behalf of the United States and the State of California[1]: (1) violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.; (2) violation of the California False Claims Act ("CFCA"), California Code § 12652 et seq.; and (3) violation of the California Insurance Fraud Prevention Act, California Insurance Code § 1871.4. Dkt. No. 27. Stars now moves to dismiss all claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Dkt. No. 29.

All parties except the Doe defendants[2] have appeared and consented to magistrate judge jurisdiction. Dkt. Nos. 4, 18, 21, 22. The Court finds this matter suitable for resolution without oral argument. Civ. L.R. 7-1(b). Having considered the parties' submissions, the Court grants Stars's motion to dismiss the amended complaint with leave to amend.

---

[1] Both the United States and California have declined to intervene in this action. Dkt. No. 9.

[2] Naming Doe defendants in a federal action is disfavored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If this action proceeds past the pleading stage and information supporting the addition of new defendants arises during discovery, Ms. Petrick may move for leave to amend to name additional defendants.

## I.     BACKGROUND[3]

Stars is a California corporation that provides therapy and counseling services to children. Dkt. No. 27 ¶ 6.  Stars bills patients and receives payment through both private insurance companies and federal and state government-funded insurance programs, including Medicaid and Medi-Cal.  *Id.*

Ms. Petrick worked as a Board Certified Behavioral Analyst ("BCBA") at Stars beginning in October 2017.  *Id.* ¶ 14.  At some point, Stars promoted Ms. Petrick to Director of Operations. *Id.*  In that role, Ms. Petrick was required to "maintain accurate documentation of billable tasks that meets the requirements of regulatory agencies and funding sources." *Id.* ¶ 17.  Using a software program called Central Reach, Ms. Petrick had access to reports of services provided to patients and corresponding billing codes.  *Id.* ¶ 16.  The Stars billing department used reports generated from Central Reach to request payment from government-funded insurance programs and from private insurance companies.  *Id.* ¶ 18.

In reviewing Central Reach reports, Ms. Petrick observed that Stars employees known as "leads" billed for certain services that only BCBAs could perform.  *Id.* ¶¶ 19-20, 23.  These services included initial assessments, plan development, parent training, and supervision.  *Id.* ¶¶ 20, 23.  Additionally, she observed that leads billed for "support Parent Training." *Id.* ¶ 19.  The amended complaint does not explain the duties and responsibilities of a "lead," and does not describe the educational or professional qualifications of the position, except to assert that "leads" are not BCBAs and do not hold master's degrees.  *See id.* ¶¶ 19, 21, 26-30.

On January 19, 2018, Ms. Petrick inquired of someone called "Marysol"[4] about the billing requirements of private insurance companies and government-funded insurance programs.  *Id.* ¶ 25.  Ms. Petrick says the following leads (presumably, Stars employees, although the amended complaint does not expressly say so) were directly assigned cases and performed services under

---

[3] Unless otherwise noted, the following factual allegations are taken from the amended complaint, and they are accepted as true for purposes of the motion to dismiss.  *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

[4] Presumably, Marysol Orozco.  *See* Dkt. No. 27 ¶ 32.  The amended complaint does not explain who this person is or her connection, if any, to Stars.

2

billing codes as follows:

- Crystal Malek: Parent Training (S5111) on January 2, 2018; Supervision (H0032) on February 5, 2018; and Supervision (H0032) on February 6, 2018.

- Danae Medrano: Supervision (H0031) on January 31, 2018.

- Vanessa Diaz Winborn: Parent Training (H2019) on February 5, 2018 and February 9, 2018; Supervision (H0032) on January 31, 2018.

- Shabnam Razawi: Parent Training (H2019) on January 31, 2018.

*Id.* ¶¶ 27-30.

On March 8, 2018, Ms. Petrick raised concerns about improper billing with Stars's Chief Executive Officer. He informed her that Stars's billing practices were "allowed." *Id.* ¶ 31. Ms. Petrick then contacted representatives of two insurance plans that service Medicaid and Medi-Cal beneficiaries to inquire directly about their billing requirements, and they responded as to their respective requirements. *Id.* ¶¶ 33-35. Believing Stars's billing practices were improper, Ms. Petrick proposed that Stars hire more BCBAs to perform services and/or supervise the work of employees who were not BCBAs, and that Stars not permit leads to continue performing and billing for certain services. *Id.* ¶ 41. Ms. Petrick says that when she continued to voice her concerns to Stars management about what she believed to be improper billing practices, she was "met with hostility, and told it was an acceptable billing practice." *Id.* ¶ 40. Stars terminated Ms. Petrick's employment on October 28, 2018. *Id.* ¶¶ 37-38, 43.

Ms. Petrick alleges "based upon . . . information and belief," that Stars knowingly submitted false claims and records to the United States and the State of California in order to obtain payments. *Id.* ¶ 39. She filed this action on June 4, 2019. Dkt. No. 1. Stars filed a motion to dismiss, which was rendered moot when Ms. Petrick filed the operative amended complaint on December 11, 2020. Dkt. Nos. 17, 27. The motion now before the Court followed. Dkt. No. 29.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

3

*Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)). A court may take notice of public records, but not of disputed facts stated in public records. *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

**B.     Rule 9(b)**

Rule 9(b) requires that allegations of fraud be stated with particularity. Specifically, averments of fraud must "be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). When an "entire claim within a complaint[] is grounded in fraud and its allegations fail to satisfy the heightened pleading

4

1  requirements of Rule 9(b), a district court may dismiss the . . . claim." *Id.* at 1107. A motion to

2  dismiss a complaint under Rule 9(b) for failure to plead with particularity is "the functional

3  equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

**III.    DISCUSSION**

Stars moves to dismiss the amended complaint on the following grounds: (1) Ms. Petrick does not adequately plead all elements of her FCA and CFCA claims, and (2) California Insurance Code § 1871.4 concerns only workers' compensation benefits and therefore does not apply here. Dkt. No. 29.

**A.    Claim 1: FCA**

Because FCA claims concern allegations of fraud, the circumstances of the fraud must be stated with particularity as required under Rule 9. Fed. R. Civ. P. 9(b); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011). An FCA plaintiff therefore "must allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement and why it is false." *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal citation omitted).

For purposes of the FCA, a claim can be false where a party falsely certifies compliance with a statute or regulation when certification is a prerequisite to obtaining payment from the government. *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171 (9th Cir. 2006). To state a false certification claim, a plaintiff must plead: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. *Id.* at 1174. A false certification may be express or implied. Express false certification occurs when the entity seeking payment certifies compliance with a law, rule, or regulation as part of the process of submitting a claim. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Implied false certification occurs when the entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though certification of compliance is not required in the claim submission process itself. *Id.* Under either

5

theory, "[i]t is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). The Court understands Ms. Petrick to bring an FCA claim under a theory of false certification. *See* Dkt. No. 27 ¶ 39.

Stars moves to dismiss the FCA claim under Rule 12(b)(6) and 9(b) for the following reasons: (1) Ms. Petrick has not adequately alleged that Stars made a false claim to the federal government; (2) Ms. Petrick has not pled materiality with particularity; and (3) Ms. Petrick has not pled scienter with particularity. Dkt. No. 29 at 9–11, 12–15. The Court addresses each argument in turn.

### 1. Presentation of a false claim

Stars argues that the amended complaint does not plead that a false claim was actually submitted to the government. Dkt. No. 29 at 9; 31 U.S.C. § 3729(a)(1)(A)-(B). Under the FCA, any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable for a civil penalty "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1)(A)-(B). A "claim" includes direct requests for government payment, as well as reimbursement requests made to the recipients of federal funds under a federal benefits program. *Id.* § 3729(b)(2)(A); *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016).

The amended complaint relies on the following allegations:

> [U]pon information and belief, Defendants knowingly, unlawfully, and wrongfully submitted and/or caused false claims, records and statements to officials of the United States, California and private insurance companies for the purpose of obtaining payment or approval in connection with a series of contracts and modifications, including: (a) submitting under billing codes including "H0031" and "H0032" requiring BCBA certification; (b) Defendants submitting billing requiring supervision and certification; and (c) double-billing authorized by Marysol including on September 4, 2018 under "H0032" between uncertified Lead and the BCBA.

Dkt. No. 27 ¶ 39. Stars correctly observes that the amended complaint does not assert any facts

6

1    indicating that Stars actually submitted a false claim or statement to the federal government. Ms.
2    Petrick pleads these allegations solely "upon information and belief." Such bare bones allegations
3    are not sufficient under Rule 9(b). *See, e.g.*, *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.
4    1993) ("[A] plaintiff who makes allegations on information and belief must state the factual basis
5    for the belief."). The amended complaint alleges that unqualified leads performed services
6    associated with billing codes that only a BCBA may perform, but it does not include allegations
7    from which the Court can infer a false or fraudulent statement or certification was submitted to the
8    United States.

9    To the extent Ms. Petrick attempts to plead a representative example of a false
10   certification, she fails to do so clearly or with the particularity Rule 9(b) requires. The amended
11   complaint contains numerous inconsistent descriptions of the billing codes that correspond to
12   particular services. *Compare* Dkt. No. 29 ¶ 27 (Supervision under code HC0032) *and id.* ¶ 28
13   (Supervision under code HC0031 *with id.* ¶ 34 (Initial Assessments under code HC0031, Plan
14   Development under code HC0032, and Supervision under code H2014) *and id.* ¶ 35 (Initial
15   Assessments under code HC0031, Plan Development/Supervision under code HC0032). It also
16   appears from the amended complaint that different insurance companies and health plans maintain
17   different requirements regarding permissible billing practices. *Id.* ¶¶ 34-36. Ms. Petrick does not
18   plead any facts concerning the representative leads' professional qualifications (other than that
19   they are not BCBAs), which plans or insurers those particular services were billed to, and what
20   those plans or insurers' requirements were for billing codes or professional qualifications. As
21   currently pled, the amended complaint does not provide a representative example of a false
22   statement or claim made to the United States.

23   Ms. Petrick argues she need only provide "reliable indicia" that the claims were actually
24   submitted, relying on *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010). In
25   *Ebeid*, the Ninth Circuit held that "in accord with general pleading requirements under Rule 9(b),
26   that it is sufficient to allege 'particular details of a scheme to submit false claims paired with
27   reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id.* at 998–99
28   (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). The

7

Fifth Circuit case of which the *Ebeid* court approved states that reliable indicia may include "dates that services were fraudulently provided or recorded, by whom, and evidence of the department's standard billing procedure." *Grubbs*, 565 F.3d at 189. Ms. Petrick pleads generally that the Stars billing department uses the Central Reach reports generated "to submit payment from the government and private insurance companies," Dkt. No. 27 ¶ 18, but it is unclear what exactly that process entails and whether entries made in the Central Reach system necessarily result in a bill to the United States. *See Grubbs*, 565 F.3d at 189 n.31 ("The doctor can cause the fraud by putting a fraudulent record into a system that he knows will ministerially crank out a fraudulent bill to the Government."). The fact that Ms. Orozco and Stars management believed the billing practices at issue were not improper, *id.* ¶¶ 24, 31, 40, does not create "a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. Like the *Ebeid* plaintiff, Ms. Petrick has not pled reliable indicia that Stars actually submitted falsely certified claims.

### 2. Materiality

Next, Stars contends that Ms. Petrick fails to state an FCA claim based on a false certification theory because she does not allege any particular statute, regulation, or contract provision with which Stars falsely certified compliance. Dkt. No. 29 at 9–13. "[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable" under the FCA. *Escobar*, 136 S. Ct. at 2002 (noting that "'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property").

The Court agrees with Stars. Here, Ms. Petrick pleads only that Stars submitted false claims "in connection with a series of contracts and modifications," but does not identify any such contracts or modifications.[5] Dkt. No. 27 ¶ 39. Without an identification of the statute, regulation, or contract provision with which Stars certified compliance, and without any allegations indicating

---

[5] The amended complaint cites to California Health and Safety Code § 1374.73 as requiring certain qualifications for providing autism services. Dkt. No. ¶ 24. However, this citation is not sufficient because section 1374.73 by its own terms does not apply to Medi-Cal plans. Cal. Health & Safety Code § 1374.72(d)(2); *Consumer Watchdog v. Dep't of Managed Health Care,* 225 Cal. App. 4th 862, 875 (2014). Ms. Petrick does not dispute this point. *See* Dkt. No. 30.

that particular billing codes or professional qualifications are material to the federal or California government's payment of Medicaid or Medi-Cal benefits, Ms. Petrick cannot adequately state a FCA claim. *United States v. Kaiser Found. Health Plan, Inc.*, No. 12-cv-03896-WHO, 2013 WL 4605096, at *6 (N.D. Cal. Aug. 28, 2013) (relator failed to state FCA claim where complaint failed to identify which law, rule, or regulation defendant undertook to comply with that is implicated in submitting a claim for payment or what submitted claims were impliedly false); *cf. Escobar*, 136 S. Ct. at 2000–01 (FCA defendant's claims for Medicaid reimbursement were adequately pled as misrepresentations because those claims used payment and other codes to convey that the defendant had complied with specific core state Medicaid regulations concerning staff qualifications).

### 3. Scienter

Finally, Stars argues that Ms. Petrick does not allege facts supporting the scienter requirement. "Under Rule 9(b), 'circumstances constituting fraud or mistake' must be stated with particularity, but 'malice, intent, knowledge, and other conditions of a person's mind,' including scienter, can be alleged generally." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 996 (9th Cir. 2011) (quoting Fed. R. Civ. P. 9(b)). The FCA's scienter requirement is not met by "innocent mistakes, mere negligent misrepresentations and differences in interpretations," *id.* (quoting *Hendow*, 461 F.3d at 1174), but instead requires that a relator allege that the defendant "knew that its statements were false, or that it was deliberately indifferent to or acted with reckless disregard of the truth of the statements." *Id.* (citing *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1074 (9th Cir. 1998)).

Here, Ms. Petrick alleges that she informed Stars management, including its CEO and CFO, of her concerns about improper billing, but they told her that Stars's billing practices were "allowed" and "acceptable." Dkt. No. 27 ¶¶ 25, 31, 40. These allegations are sufficient to show that Stars was fully aware of the concerns Ms. Petrick raised but, without more, are insufficient to show that Stars certified compliance with a statute, regulation, or contract provision knowing the certification was false.

Accordingly, the Court dismisses the FCA claim for failure to state a claim under Rule

1  9(b).

### B.    Claim 2: CFCA

The CFCA is based on the FCA, and the elements of a CFCA claim are the same as those of a FCA claim, except the allegedly false claim is made to the California state government. *United States ex rel. Afionyan v. Pedorthic Lab Specialist Custom Shoe Co.*, 781 F. App'x 671, 672 n.1 (9th Cir. 2019) (citing Cal. Gov't Code § 12651(a)(1)-(2); *Laraway v. Sutro & Co.*, 96 Cal. App. 4th 266 (2002)).  Stars contends that because Ms. Petrick's CFCA claim is predicated entirely on the same allegations made in support of her FCA claim, she has failed to state a CFCA claim for the same reasons she fails to state an FCA claim.  Dkt. No. 29 at 15.  Ms. Petrick does not dispute that her CFCA is based on the same acts as the FCA claim.  *See* Dkt. No. 30; Dkt. No. 27 ¶¶ 48-52.  The amended complaint does not include allegations concerning an actual submission of a false certification or claim to the California state government.  Accordingly, the Court dismisses the CFCA claim with leave to amend for the same reasons described above.  *See supra* Section III.A.

### C.    Claim 3: California Insurance Code § 1871.4

Ms. Petrick claims that "Defendant violated Section 1871.4 [of the California Insurance Code] by knowingly presenting false claims to various private insurance companies, as described above."  Dkt. No. 27 ¶ 54.  Stars argues that Ms. Petrick's claim under section 1871.4 is improper because that statute applies only to workers' compensation benefits, which is not at issue here.  Dkt. No. 29 at 15–16.  Ms. Petrick responds that section 1871.4 extends beyond workers' compensation benefits, because subsection 1871.4(a)(3) states that it is unlawful to "knowingly assist, abet, conspire with, or solicit a person in an unlawful act under this section."  Dkt. No. 30 at 9.

Ms. Petrick's argument is inconsistent with the plain language of section 1871.4, which provides:

> (a) It is unlawful to do any of the following:
>
> (1) Make or cause to be made a knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying any compensation, as defined in Section

10

> 3207 of the Labor Code.
>
> (2) Present or cause to be presented a knowingly false or fraudulent written or oral material statement in support of, or in opposition to, a claim for compensation for the purpose of obtaining or denying any compensation, as defined in Section 3207 of the Labor Code.
>
> (3) Knowingly assist, abet, conspire with, or solicit a person in an unlawful act under this section.
>
> (4) Make or cause to be made a knowingly false or fraudulent statement with regard to entitlement to benefits with the intent to discourage an injured worker from claiming benefits or pursuing a claim.

Cal. Labor Code § 1871.4(a)(1)-(4). As Ms. Petrick acknowledges, subsections 1871.4(a)(1) and (2) specifically refer to California Labor Code § 3207, which defines "compensation" as benefit or payment made to an injured employee (i.e., workers' compensation). Cal. Labor Code § 3207. Subsection 1871.4(a)(4) likewise expressly refers to an injured worker. Subsection 1871.4(a)(3) is limited to knowing misconduct that facilitates another person in committing "an unlawful act under this section," and "this section" clearly refers to section 1871.4, which concerns workers' compensation benefits. Ms. Petrick cites no authority to the contrary.

Alternatively, Ms. Petrick argues that she has stated a claim for violation of California Insurance Code § 1871.7. Dkt. No. 30 at 9–10. The amended complaint does not plead a violation of section 1871.7. *See* Dkt. No. 27 ¶¶ 53-56. Even if it did, such a claim sounds in fraud and must meet the pleading requirements of Rule 9(b)—which, as the Court has stated above, Ms. Petrick has not done. *See supra* Section III.A.2.

As the allegations of the amended complaint appear to have nothing to do with workers' compensation, it would be futile to permit Ms. Petrick to amend her claim for relief under California Insurance Code § 1871.4. Accordingly, the Court dismisses Ms. Petrick's claim under section 1871.4 with prejudice.

**D.    Leave to Amend**

While leave to amend generally is granted liberally, the Court has discretion to dismiss a claim without leave to amend if amendment would be futile. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F.

Supp. 2d 1193, 1197 (N.D. Cal. 2010) (citing *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996)).

Because the Court cannot say that amendment would be futile with respect to the FCA and CFCA claims, the Court gives Ms. Petrick leave to amend her complaint to address the deficiencies described above. However, for the reasons stated above, amendment of Ms. Petrick's California Insurance Code § 1871.4 claim would be futile, and she may not amend her complaint with respect to that claim.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Stars's motion to dismiss. Ms. Petrick may amend her complaint to attempt to state claims for relief under the FCA and the CFCA. Ms. Petrick may file a second amended complaint by **March 19, 2021**.

**IT IS SO ORDERED.**

Dated: March 5, 2021

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge